UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE CRANMER, | No.  2:15-cv-1868 AC P |
| Plaintiff, | |
| v. | ORDER |
| JOE A. LIZARRAGA, | |
| Defendant. | |

I.      Introduction

Plaintiff is a state prisoner at Mule Creek State Prison (MCSP), under the authority of the California Department of Corrections and Rehabilitation (CDCR), who proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, and a motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  Plaintiff has consented to the jurisdiction of the undersigned United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c), and Local Rule 305(a).  See ECF No. 5.  For the reasons that follow, this action will be dismissed without leave to amend for failure to state a cognizable claim.

II.      Motion for Leave to Proceed In Forma Pauperis

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  However, because this action must be dismissed without leave to amend, the court will not impose the in forma pauperis filing fee.

1

1  III.    Screening of Complaint

2          A.    Legal Standards

3      This court is required to screen complaints brought by prisoners seeking relief against a

4  governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).

5  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

6  legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek

7  monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1),

8  (2).

9      A claim is legally frivolous when it lacks an arguable basis in law or fact.  Neitzke v.

10 Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir.

11 1984).  The court may dismiss a claim as frivolous when it is based on an indisputably meritless

12 legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327; see

13 also Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma

14 pauperis] claims which are based on indisputably meritless legal theories or whose factual

15 contentions are clearly baseless.").  The critical inquiry is whether a claim, however inartfully

16 pled, has an arguable legal and factual basis.

17     To survive dismissal for failure to state a claim, "a complaint must contain sufficient

18 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

19 v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

20 (2007)).  In reviewing a complaint under this standard, "a court must accept as true all allegations

21 of material fact and must construe those facts in the light most favorable to the plaintiff."

22 Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted).  "Additionally, in general,

23 courts must construe pro se pleadings liberally."  Id. (citation omitted).

24          B.    Plaintiff's Allegations and Claims

25     Plaintiff, who is Caucasian, challenges the January 15, 2014 decision of a MCSP Unit

26 Classification Committee (UCC), as set forth in a 128-G Classification Chrono, to retain

27 plaintiff's Integrated Housing Code (IHC) status as "Restricted Partially" (RP) rather than

28 "Racially Eligible" (RE).  The decision to designate plaintiff RP was initially made on September

2

1   15, 2010, following the issuance of a Rules Violation Report (RVR) against plaintiff on June 2,

2   2010 for, inter alia, "Making False Allegations."  After claiming that he had been raped by an

3   African American inmate, plaintiff informed staff that the interaction was consensual and that he

4   had fabricated the allegation due to inmate peer pressure and threats.  On January 15, 2014, the

5   UCC denied plaintiff's request to re-designate him RE.  Plaintiff responded by filing and

6   exhausting an administrative appeal and then filing the instant action against defendant MCSP

7   Warden Lizarraga based on the Warden's alleged "inaction" despite being "made personally

8   aware of this on-going discrimination."  ECF No. 1 at 4.

9        In his complaint, plaintiff alleges that the UCC's refusal to re-designate him RE and

10   permit him to house with African American inmates is "discriminatory" because it is based on the

11   "personal opinions" of prison staff rather than "security issues."  ECF No. 1 at 2.  Plaintiff alleges

12   that his RP designation creates the false impression among other inmates that plaintiff is rascist.

13   Plaintiff explains that he is "repeatedly approached by neo-nazi and supremist groups who learn

14   of my housing status thinking 'Oh, he's one of us.'  In actuality, I am a person of diversity and . .

15   . [t]t hurts me a lot to [be] presumed racist by others."  Id. at 4.  Plaintiff seeks a declaration that

16   his RP status is "illegal and in violation of [plaintiff's] constitutional rights," and injunctive relief

17   directing prison officials to restore plaintiff's RE status.  Id. at 3.

18        C.        Screening

19        The undersigned finds that the complaint fails to state a cognizable federal civil rights

20   claim and that this deficiency cannot be cured by amendment.

21        Plaintiff's contention that the challenged UCC decision is "discriminatory" lacks

22   substance.  "'Prisoners are protected under the Equal Protection Clause of the Fourteenth

23   Amendment from invidious discrimination based on race.'  Wolff v. McDonnell, 418 U.S. 539,

24   556 (1974) (citation omitted).  A prison classification based on race is 'immediately suspect' and

25   is subject to strict scrutiny.  Johnson v. California, 543 U.S. 499, 505-06 (2005)."  Hernandez v.

26   Cate, 918 F. Supp. 2d 987, 1006 (C.D. Cal. 2013).  However, CDCR's integrated housing policy,

27   reflected in the IHC, "does not use race as the main determining factor for housing" but is

28   intended to "implement race-neutral cell assignments," see Glover v. Cate, 2011 WL 2746093, at

3

1   *2, 2011 U.S. Dist. LEXIS 77096, at *5-6 (Case No. 2:10-CV-0430 KJM KJN) (E.D. Cal. July

2   13, 2011), report and recommendation adopted in pertinent part by order filed September 27,

3   2011 (ECF No. 34).  <u>See also</u> CDCR Department Operations Manual (DOM), §§ 54055.3,

4   54055.4.[1]  "Plaintiff cannot articulate a claim of racial discrimination based on being subjected to

5   a prison housing regulation which does not use race as the main determining factor for housing."

6   <u>Glover</u>, 2011 WL 2746093, at *6, 2011 U.S. Dist. LEXIS 77096, at *14-5.  Significantly, the

7   ////

8   ////

9

10  [1]  CDCR DOM § 54055.3 provides the following definitions and policy statements:

11          <u>Integrated Housing</u>:  Integrated Housing refers to the housing of
        inmates into beds without using race as the sole determinative
12      criterion while minimizing any potential impact upon an inmate's
        safety, and maintaining the safety and security of the public, staff,
13      and institutions.

14          <u>Integrated Housing Code</u>:  The Integrated Housing Code (IHC) is a
        housing code that reflects the inmate's eligibility to be racially
15      integrated in a housing environment.  The inmate may be eligible to
        be housed with all races, with only certain races, or with only his
16      own race based on individual case factors.  The IHC will be
        assigned during the reception center intake process and is subject to
17      review by a classification committee.

18          Consistently, CDCR DOM § 54055.4 identifies the individual case factors to be assessed
    for each inmate in determining his or her housing assignment in order to ensure the safety and
19  security of all inmates as well as that of the public, staff, and institution:

20          An inmate's race will not be used as a primary determining factor
        in housing an institution's inmate population.  Inmate housing
21      assignments shall be made on the basis of available documentation
        and individual case factors to implement an IHP.  Individual case
22      factors include, but are not limited to:

23          History of racial violence.
        Commitment offense/time to serve.
24      Classification score.
        Custody level.
25      Education.
        Disciplinary history.
26
            Housing assignments will be determined in a manner that will
27      ensure that the safety, security, treatment, and rehabilitative needs
        of the inmate are considered, as well as the safety and security of
28      the public, staff, and institutions.

                                            4

1  decision plaintiff challenges was individualized and based on his own conduct,[2] not premised on

2  a race-based classification in which plaintiff was treated differently merely because he is

3  Caucasian.  For these reasons, the decision challenged by plaintiff does not and cannot support a

4  "discrimination" claim.

5      Nor does the decision implicate due process considerations.  It is well established that

6  prisoners have no federally-protected liberty interest in their classification status.  See Hernandez

7  v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).  "[I]t is well settled that prison officials must

8  have broad discretion, free from judicial intervention, in classifying prisoners in terms of their

9  custodial status."  McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir.1990) (citations and internal

10  quotation marks omitted).  Accord, Garcia v. Biter, 2016 WL 2625840, at *2 n.2, 2016 U.S. Dist.

11  _____

12  [2]  As set forth in the Third Level Review decision denying plaintiff's administrative appeal
    challenging the UCC decision, see ECF No. 1 at 5-6:

13
14              [T]here exists a legitimate penological interest in continuing his
                single cell status.  This interest is based upon the appellant making
15              a case claim that he was raped by a[n] African American inmate
                while he was taking a shower, when in fact the sexual act was
16              consensual.  As public safety is of the highest order in the scope of
                CDCR's responsibilities, such threats to institutional security and
17              the appellant's safety, cannot be easily set aside based upon the
                appellant's contention that he can successfully program with other
18              races.  The committee's requirement that the appellant remain on
                IHC RP status is a reasonable expectation.

19
20              [¶]  The Third Level of Review (TLR) notes that California Code of
                Regulations, Title 15, Section (CCR) 3375(a) [setting forth case
21              factors to be considered in assessing inmate classification]
                mandates that matters of classifications shall be individually
22              applied.  The appellant's case factors have been afforded due
                consideration in the context of the requirements of CCR 3270
23              [providing in part that "[t]he requirement of custodial security and
                of staff, inmate and public safety must take precedence over all
24              other considerations in the operation of all the programs and
                activities of the institutions of the department"], and having
                rendered a decision the committee has provided the basis for that
25              decision to the appellant in person and in writing.  The institution
                has the authority to determine the appellant's IHCs.

26              [¶]  The TLR notes that the appellant was advised at the SLR that
                his current IHC would be reevaluated and present to UCC.  Despite
27              the appellant's disagreement with the SLR decision, he has failed to
                offer any new or compelling information that substantiates his
28              claim.  The examiner concurs with the SLR decision.  Further
                review at the TLR is not warranted.

5

1   LEXIS 61252, at *5 n.2 (Case No. 1:13cv0599 LJO SKO P) (E.D. Cal. May 9, 2016) ("Plaintiff's

2   housing status and other custody or classification factors are left to the sound discretion of prison

3   officials.").

4          For the foregoing reasons, this court finds that the complaint does not state a cognizable

5   federal civil rights claim and this deficiency cannot be cured by amendment.

6          IV.     Conclusion

7          "A district court may deny leave to amend when amendment would be futile."  Hartmann

8   v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez, supra, 203 F.3d at 1129 ("Courts

9   are not required to grant leave to amend if a complaint lacks merit entirely.").  Because plaintiff is

10  unable to allege any facts, based upon the circumstances he challenges, that would state a

11  cognizable federal civil rights claim, this action will be dismissed with prejudice.

12         Accordingly, IT IS HEREBY ORDERED that:

13         1. This action is dismissed with prejudice for failure to state a cognizable claim;

14         2. Plaintiff's motion to proceed in forma pauperis, ECF No. 2, and "motion to prosecute

15  complaint," ECF No. 6, are denied as moot; and

16         3. The Clerk of Court is directed to close this case.

17  DATED: May 26, 2016

18                                      _____
                                        ALLISON CLAIRE
19                                      UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

                                        6